# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**WILLIAM E. LUCAS,**
**Claimant Below, Petitioner**

**FILED**

July 20, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 18-0279** (BOR Appeal No. 2052252)
(Claim No. 970014356)

**KROGER LIMITED PARTNERSHIP 1,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner William E. Lucas, by Samuel F. Hanna, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Kroger Limited Partnership 1, by Sean Harter, its attorney, filed a timely response.

The issue on appeal is medical benefits. The claims administrator denied a referral to a neurologist on November 16, 2016. The Office of Judges affirmed the decision in its September 27, 2017, Order. The Order was affirmed by the Board of Review on February 26, 2018. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lucas, a laborer, injured his cervical spine in the course of his employment on August 23, 1996, when he fell seven feet off of a truck ramp. Bill Hennessey, M.D., performed an independent medical evaluation on July 12, 1997, in which he found that Mr. Lucas did not have a specific medical diagnosis to explain his complaints of cervical pain. Dr. Hennessey stated that neither he nor John Schmidt, M.D., were able to diagnose a specific medical condition to explain the neck pain. He stated that the pain was possibly related to a prior partial C5-6 fusion. He opined that Mr. Lucas had reached maximum medical improvement but had not made a full recovery.

1

A December 19, 1997, treatment note by Dr. Schmidt indicates Mr. Lucas had been through physical therapy and work conditioning. He was still unable to perform heavy physical labor due to neck and right shoulder pain. He also had occasional numbness in his first two fingers. Dr. Schmidt found that he had reached maximum medical improvement. He diagnosed residual right C6 radiculopathy secondary to a previous ruptured disc and surgery.

Michael Condaras, D.C., performed an independent medical evaluation on January 26, 1999, in which he found that Mr. Lucas had reached maximum medical improvement. He noted a previous neck injury from a 1992 car accident and found he had been fully compensated by a prior 12% permanent partial disability award.

In an initial evaluation on August 6, 2001, J.K. Lilly, M.D., found persistent right C5 and C6 sensory radiculopathy. There was also mild facet arthrosis. He found Mr. Lucas had reached maximum medical improvement. Dr. Lilly opined that therapeutic treatments like injections or radiofrequency lesioning would be beneficial to Mr. Lucas. Dr. Lilly also opined that Mr. Lucas may later develop progressive sensory radicular pain, at which time a spinal cord stimulator should be considered. He recommended an increase in pain medication.

Bruce Guberman, M.D., performed an independent medical evaluation on September 12, 2002, in which he diagnosed post-traumatic acute and chronic cervical strain and right shoulder sprain. Dr. Guberman found he had reached maximum medical improvement and that no further treatment or testing were likely to improve his condition, which would probably continue to be progressive.

The claims administrator requested additional medical information from Francis Saldanha, M.D., on several occasions related to his request for a neurosurgical consultation. On June 3, 2015, the claims administrator sent a letter stating that a May 1, 2015, request from Dr. Saldanha for a neurosurgical consultation with Dr. Schmidt was being withheld pending further evidence showing medical necessity related to the compensable injury. The claims administrator again sent a letter requesting evidence showing the medical necessity of a neurosurgical consultation as related to the compensable injury on March 28, 2016. On July 28, 2016, the claims administrator denied the request for a neurosurgical consultation as no additional information was received showing the medical necessity related to the compensable injury. The request was again denied on November 16, 2016, and it was noted that there was no response to a request for additional medical documentation from Dr. Saldanha related to the referral.

A March 27, 2017, office note by Dr. Saldanha indicates Mr. Lucas did not receive authorization for continued treatments. His last injection was in June of 2014 and his neck pain continued to worsen. Dr. Saldanha stated he was referring Mr. Lucas for a neurosurgical consultation.

The Office of Judges affirmed the claims administrator's denial of a referral to a neurologist on September 27, 2017. It found that Dr. Saldanha requested referral to a neurologist on May 29, 2016. The claims administrator asked for additional information. In a March 27,

2017, office note, Dr. Saldanha noted that authorization had not been approved, the last injection was in June of 2014, and that Mr. Lucas's neck pain had increased. There was no indication of when Dr. Saldanha had last examined Mr. Lucas. The Office of Judges noted that Dr. Saldanha had previously requested a neurosurgical consultation on May 1, 2015. In a June 3, 2015, letter, the claims administrator requested additional information regarding a causal connection between the consultation and the compensable injury. The claims administrator sent another letter on March 28, 2016, again requesting additional information regarding causality and withheld a decision pending receipt of such information. When no additional information was received, the claims administrator denied the consultation. The Office of Judges concluded that based on the current record, it is more likely than not that the neurosurgical consultation is not necessitated by the compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 26, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Despite several requests, no additional information was submitted showing a causal connection between the neurosurgical consultation and the compensable injury. The evaluators of record opined that Mr. Lucas reached maximum medical improvement and that no further treatment would be of benefit. Mr. Lucas failed to show that the requested consultation is reasonably required and medically necessary to treat his compensable injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 20, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.

3